So Ordered.

Signed this 31 day of May, 2023.




_____

Wendy A. Kinsella
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | |
| Eric A. Olson, | Case No. 22-30015 |
| Debtor. | Chapter 13 |

| | |
|---|---|
| Appearances: | |
| Office of the Chapter 13 Trustee<br>Counsel for Mark Swimelar<br>250 S. Clinton Street, Suite 203<br>Syracuse, New York 13202 | *Edward J. Fintel, Esq.* |
| Peter C. Schaefer, Esq.<br>Counsel for Eric A. Olson<br>Nettleton Commons<br>313 East Willow Street, Suite 105<br>Syracuse, New York 13202-1905 | *Peter C. Schaefer, Esq.* |

**<u>Memorandum-Decision and Order on Trustee's Limited Objection to Claimed Exemption
and Objection to Confirmation of Debtor's Chapter 13 Plan</u>**

Before the Court is the Chapter 13 Trustee's ("Trustee") Limited Objection to Claimed

Exemption (the "Exemption Objection") and related Objection to Confirmation of Plan (the "Plan

1

Objection," together with the Exemption Objection, the "Objections").[1] The Objections assert that Debtor failed to provide for payment of an exempt workers' compensation settlement into his proposed Plan as projected disposable income under 11 U.S.C. § 1325(b)[2] and therefore it cannot be confirmed. For the reasons detailed below, the Court overrules the Exemption Objection and sustains the Plan Objection.

## Jurisdiction

The Court has core jurisdiction over the parties and the subject matter of these contested matters in accordance with 28 U.S.C. §§ 1334 and 157(b)(2)(A), (b)(2)(L) and (b)(2)(O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

The facts in this case are undisputed. On January 14, 2022 (the "Petition Date"), Eric A. Olson ("Debtor") filed a chapter 13 Voluntary Petition (the "Petition"). On Schedule A/B of the Petition, Debtor listed an interest in a "workers' compensation settlement- not yet received" with a value of $200,000.00 (the "Workers' Compensation Settlement"). *Petition,* at p. 14. Debtor claimed his interest in the "workers' compensation settlement- not yet received" as exempt on Schedule C pursuant to "NY Work Comp. Law § 33, 218; Labor Law § 595(2)." *Id*. at p. 17. Debtor disclosed 2021 worker's compensation income totaling $40,000.00. *Id.* at p. 51. Schedules I and J identified Debtor's monthly income and expenses as of the Petition Date which resulted in

---

[1] The record consists of the Petition (the "Petition" at Doc. 1); chapter 13 Plan (the "Plan" at Doc. 2); Amended Schedules A/B, and C ("Amended Schedules" at Doc. 13); Trustee's Limited Objection to Claimed Exemption ("Exemption Objection" at Doc. 14); Objection to Confirmation of Plan ("Plan Objection" at Doc. 16); Debtor's Letter Brief in Response to Exemption Objection ("Debtor's Response" at Doc. 20); Trustee's Letter Brief in Support of Objections ("Trustee's Response" at Doc. 21); Trustee's Supplemental Letter Brief in Support of Objections ("Trustee's Supplement" at Doc. 30); Debtor's Supplemental Letter Brief in Opposition to Objections ("Debtor's Supplement" at Doc. 34); Trustee's Reply Letter Brief ("Trustee's Reply" at Doc. 35); and Second Amended Schedule C ("Second Amended Schedule C" at Doc. 37).

[2] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq.*, and will hereinafter be referred to as "section [section number]."

2

monthly net income of $150.00. *Id.* at pp. 45-48. Debtor also completed Official Form 122C-1 Statement of Monthly Income which reflected that he is a below-median Debtor. *Id.* at pp. 57-62.[3] As a result, the minimum plan commitment period of 3 years is permissible.

Along with the Petition, Debtor filed a chapter 13 Plan (the "Plan") that proposed monthly payments of $150.00 for the minimum 3 years totaling $5,400.00, resulting in an estimated 4% repayment to nonpriority unsecured creditors.[4] *Plan,* at pp. 2, 5. None of the Workers' Compensation Settlement was dedicated to the Plan. Thereafter, the Trustee filed the Exemption Objection, asserting "[w]hile the [Workers' Compensation F]unds may be claimed as exempt, they are also considered disposable income that should be provided for in the plan." *Exemption Objection*, at p. 1. The Trustee reiterated that position in the Plan Objection. *Plan Objection*, at p. 1.

Prior to the confirmation hearing, Debtor filed Amended Individual Schedules A/B and C (the "Amended Schedules"). The Amended Schedules increased the value of the Workers' Compensation Settlement to $377,293.00 and listed the full amount as exempt pursuant to New York Workers' Compensation Law §§ 33 and 218, and Labor Law § 595(2). *Amended Schedules*, at pp. 7, 10.[5] Debtor later disclosed that he received the funds on January 15, 2022, one day after the Petition Date.

The award at issue was paid pursuant to the terms of a Workers' Compensation Settlement Agreement dated November 11, 2021 (the "Settlement Agreement"). *Debtor's Response, Exhibit*

---

[3] Form 122C-1 Statement of Monthly Income uses Debtor's and Debtor's spouse's average monthly income received in the six-months prior to the Petition Date to calculate current monthly income. In this case the average current monthly income was $6,513.69 which included pre-petition monthly worker's compensation payments. This results in an annualized income of $78,164.28. The annualized median income in New York for Debtor's household size as of the Petition Date was $92,508.00, making Debtor a "below-median income debtor."

[4] In below-median debtors, the plan payment is the projected disposable income which is typically calculated using the actual income and expenses contained on Schedules I and J.

[5] Debtor filed a Second Amended Schedule C on January 16, 2023 to identify New York Debtor and Creditor Law section 282(2)(e) as an additional statutory ground for the exemption.

3

D. The total payment consisted of an Indemnity Allocation of $274,630.00 and Medical Allocation of $144,293.00 and was "in lieu of any modification of prior awards or any future or additional awards of compensation, to be made in one payment." *Settlement Agreement*, at p. 2. The Settlement Agreement provided that "[o]ngoing payments to the injured worker will cease upon the date the hearing where settlement is approved," noting Debtor's average wage was $1,762.68 per payroll, and he had been receiving $864.32 TR per week.[6] *Id.* There was no finding of permanency. *Id.* In exchange for the lump sum payment, Debtor waived all further claims for additional compensation, medical treatment, transportation, miscellaneous expenses or reduced earnings arising from his accident. *Id.* Debtor acknowledged that "this award was to compensate for the loss and/or reduction of Debtor's future earnings for the rest of his life." *Debtor's Supplement*, at p. 3.

As this issue was matter of first impression in the Northern District of New York at that time, the Court requested additional briefing. The Debtor's Response[7] argued: 1) the Workers' Compensation Settlement is not disposable income pursuant to 11 U.S.C. § 1325(b)(1) because it is exempt; 2) regardless of its exempt status, the settlement is not projected disposable income pursuant to 11 U.S.C. § 1325(b)(1) because it was received in a "gap period,"[8] after the Filing Date but before his first Plan payment was due, and was therefore outside of the "applicable commitment period;" and 3) to the extent the Court finds the proceeds are projected disposable income that must be provided for in the Plan, they are nevertheless reasonably necessary for the

---

[6] The TR is a tentative rate, the weekly rate assigned by the Workers' Compensation Board for indemnity payments pending final adjudication of outstanding issues relating to benefit rates.
[7] Although Debtor originally failed to file a response to the Exemption Objection, the Trustee agreed to have it heard with the Plan Objection.
[8] In common bankruptcy parlance, the term "gap period" refers to the time between the last day of the calendar month proceeding the bankruptcy filing and the filing date and is typically used when discussing currently monthly income under section 101(10A).

4

maintenance and support of Debtor and Debtor's dependents. *Debtor's Response*, at pp. 2-4.[9] The Trustee's Response countered that: 1) the majority of courts addressing this issue have held that an otherwise exempt asset is still considered in the disposable income analysis pursuant to section 1325(b)(1) if it is not reasonably necessary for the support of Debtor and his family; and 2) section 1325(b)(1)(B) does not create a gap period that would allow debtors to manipulate the timing of receipt of assets to keep them outside of the applicable commitment period. *Trustee's Response*, at pp. 3-6.

The Court periodically adjourned the Objections with the parties' consent in anticipation of a decision being rendered on a similar matter by Chief Judge Diane Davis of the Bankruptcy Court for the Northern District of New York (Utica Division) in *In re McGuire*, Case No. 20-61183. On June 24, 2022, she issued a Memorandum-Decision and Order finding a lump sum inheritance was properly claimed as exempt under the wildcard exemption of section 522(d)(5), and therefore was immunized from pre-petition debts and allowed creditors' claims. *In re McGuire*, No. 20-61183, 2022 Bankr. LEXIS 1778 at *6 (Bankr. N.D.N.Y. June 24, 2022) (the "*McGuire Decision*"). Judge Davis also concluded the exempt inheritance did not constitute disposable income under section 1325(b), but the amount exceeding the exemption limit must be paid into the plan to satisfy the liquidation analysis under section 1325(a)(4). *Id*. The Trustee timely appealed the *McGuire Decision* to the District Court. *Swimelar v. McGuire*, 22-CV-0715 (N.D.N.Y. 2022).

---

[9] Debtor also argued if the Workers' Compensation Settlement is disposable income, $144,293.00 should be set aside out of the $377,293.00 award for necessary medical expenses. *Debtor's Response*, at p. 4. The Trustee consented to Debtor's request and the Medical Allocation is not considered in connection with this analysis. *Trustee's Response*, at p. 2.

5

After publication of the *McGuire Decision*, the parties were permitted to supplement their briefing. The Trustee's Supplement distinguished the facts of this case from the *McGuire Decision* and reiterated that the Workers' Compensation Settlement should be included in the projected disposable income analysis. *Trustee's Supplement*, at pp. 3-6. Debtor's Supplement asserted that the holdings in the *McGuire Decision* were squarely on-point with this case. *See generally Debtor's Supplement*. Debtor argued the Workers' Compensation Settlement is a pre-petition asset that became property of the estate under section 541(a)(1) upon the commencement of the case and was thereafter properly exempted, so it cannot be considered in the disposable income analysis. Debtor also cited New York's intention to protect workers' compensation awards from creditor reach and related public policy considerations that supported a determination that those funds should not be used to pay debts of creditors; instead, they should be used to support the disabled worker. Relying on the *McGuire Decision*, Debtor argued that the Workers' Compensation Settlement was a lump sum payment, not a stream of payments, and therefore it should not be included in calculating projected disposable income. Debtor reiterated his argument that the award was received during the gap period that existed between the Petition Date and the first Plan payment due date on February 14, 2022, so it was not received within the three-year "applicable commitment period." *See generally Debtor's Supplement*.

The Trustee briefly responded rebutting the "gap period" argument as irrelevant because the funds were received post-petition and a gap period only pertained to the analysis of pre-petition current monthly income for the determination of Debtor as an above or below median income debtor. *See generally Trustee's Reply*.[10] A final hearing was held on January 23, 2023, at which time the matter was taken under advisement.

---

[10] The Trustee has not alleged that the Petition or the Plan were not filed in good faith and confirmed that position on the record.

6

The Court conducted an in-depth analysis of the *McGuire Decision,* related case law and the pleadings filed herein, and finds the Debtor properly claimed his exemption in the Workers' Compensation Settlement. Nevertheless, the portion of the award representing lost or reduced wages during the Plan's applicable commitment period must be included in calculating Debtor's projected disposable income. Accordingly, the Exemption Objection is overruled and the Trustee's Plan Objection is sustained.

## Discussion

I. Exemption Objection

The commencement of this bankruptcy case created an estate, including all of Debtor's interests, legal and equitable. 11 U.S.C § 541(a). The definition of estate property is broadened in a chapter 13 case under section 1306(a) to include "all property … that the debtor acquires after the commencement of the case but before the case is closed, … and earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed or converted. . . ." 11 U.S.C. § 1306(a); *Swimelar v. Baker (In re Baker)*, 604 F.3d 727, 729 (2d Cir. 2010).

Under this broad definition, the pre-petition entitlement to the Workers' Compensation Settlement is initially property of Debtor's estate but is thereafter removed pursuant to Debtor's properly claimed New York State exemptions on Schedule C. 11 U.S.C. §522(b)(1); *Baker*, 604 F.3d at 729-30 (debtors may retain exempt assets). The Trustee has conceded the Workers' Compensation Settlement is exempt; however, he filed the Exemption Objection as a "placeholder" to preserve his Confirmation Objection after several other courts denied similar confirmation objections because the trustee failed to separately object to the claimed exemption. *See Trustee's Supplement*, at p. 4; *In re Ferretti*, 203 B.R. 796, 799-800 (Bankr. S.D. Fla. 1996).

7

Thus, to the extent the Exemption Objection was a procedural necessity to maintain and prosecute the Plan Objection, the Court finds it was properly noticed but will overrule it and allow the full amount of Debtor's claimed exemption in the Workers' Compensation Settlement.

The Court must now turn its attention to section 522(c), which "defines the effect claiming an exemption has on the treatment of creditors, both before a case has commenced and after a discharge is entered." *McGuire*, 2022 Bankr. LEXIS 1778, at *9. It expressly provides that exempt property "is not liable during or after this case for any debt of the debtor that arose . . . before the commencement of the case, except [in circumstances not applicable here involving, *inter alia*, certain non-dischargeable obligations for taxes, domestic support obligations, fraud.]"[11] 11 U.S.C. §522(c); *McGuire*, 2022 Bankr. LEXIS 1778, at *11.

This protection of exempt assets from pre-petition creditors' claims under section 522(c) exists regardless of whether a debtor files under chapter 7, 11, 12, or 13 of this title. *See* 11 U.S.C. § 103(a) ("Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title…"). The policy underlying the exemptions is to ensure that a debtor is not impoverished after bankruptcy and that the debtor's essential needs are protected. *In re Nuara,* 607 B.R. 116, 123 (Bankr. E.D.N. Y. 2019) (citing *Clark v. Rameker,* 573 U.S. 122, 129, 134 S. Ct. 2242, 189 L. Ed.2d 157 (2014)). "Exemptions prevent a debtor from losing everything. They also promote a debtor's fresh start after the bankruptcy discharge because the debtor will be able to use the exempt property to aid in financial rehabilitation." *In re Little,* No. 05-68281, 2006 Bankr. LEXIS 1010 at *3 (Bankr. N.D.N.Y. Apr. 24, 2006).

Because the fresh start in chapter 13 is protected by a debtor's ability to retain non-disposable income rather than exempt assets, the importance of exemptions in chapter 13 cases is

---

[11] Section 522(c) contain the list of certain types of pre-petition debts for which a creditor may pursue Debtor's exempt property.

diminished. *In re Schnabel,* 153 B.R. 809, 817 (Bankr. N.D. Ill. 1993). As Judge Davis noted: "[i]n practice however, exemptions serve a different purpose in a chapter 7 proceeding where all property except exempt property is liquidated by a trustee and the resulting cash is distributed to creditors." *McGuire*, 2022 Bankr. LEXIS 1778, at *10. "Chapter 13 debtors [on the other hand] are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income." *Id.* at 11 (quoting *Hamilton v. Lanning*, 560 U.S. 505, 509, 130 S. Ct. 2464, 2469, 177 L. Ed.2d 23, 40 (2010)). In exchange for committing to pay income to creditors though a plan, a debtor may reap the many benefits of a chapter 13, including, *inter alia*, repaying mortgage or other arrears over time to retain a residence or secured asset, stripping a wholly unsecured junior mortgage on a residence, cramming down a secured loan to the value of an asset, or repaying a potential preference or fraudulent conveyance over time without pursuing a claw-back from the transferee. *See* Pamela Foohey, et al*., Article: Portraits of Bankruptcy Filers,* 56 Ga. L. Rev. 573, 594 (Spring 2022). In addition, the broader scope of the chapter 13 "super discharge" eliminates certain debts that may survive a chapter 7 discharge, such as marital property settlements that are not domestic support obligations, damages for willful and malicious injury to property, and certain civil fines and penalties. *See generally* 11 U.S.C. § 1328; *In re Ladieu*, No. 14-10551, 2014 Bankr. LEXIS 1801, at *19 (Bankr. D. Vt. June 1, 2014) (citing *In re Mandarino*, 312 B.R. 214 (Bankr. E.D.N.Y. 2002). The cost for receiving these benefits is "committing to pay all creditors all income that is not reasonably necessary for support received during the thirty-six month [plan] period." *In re Springer*, 338 B.R. 515, 520 (Bankr. N.D. Ga. 2005).

II.     Projected Disposable Income

With these chapter 13 advantages and obligations as a backdrop, this Court must now consider if the exempt Workers' Compensation Settlement is "projected disposable income" that must be provided for in the Plan under section 1325(b)(1)(B).

Filing a chapter 13 case is a voluntary choice wherein only the individual debtor is authorized to propose a plan to repay all or part of pre-petition debts through installment payments to creditors over a three- to five-year period. 11 U.S.C. §§ 1321 and 1322(a). Section 1322 sets out the required contents of a plan and contemplates the use of a debtor's future earnings or future income to fund it. 11 U.S.C. § 1322(a)(1). Section 1322(a)(8) states the plan "may provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor. . . ." 11 U.S.C. § 1322(a)(8).

Sections 1325(a) and (b) govern when a chapter 13 plan may be confirmed. Section 1325(a)(4) sets out the "best interest of creditors" test that requires, as of the effective date of the plan, the value "of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4). This provision "allows a debtor to retain property that would otherwise have to be surrendered in a chapter 7 proceeding." *McGuire*, 2022 Bankr. LEXIS 1778, at *14 (citing *In re Moglia*, 2014 Bankr. LEXIS 5197, at *11 (Bankr. D. Or. Dec. 30, 2014)).

When an unsecured creditor or trustee objects to confirmation, a court may not confirm a plan that does not pay unsecured creditors in full unless section 1325(b) is satisfied. To achieve confirmation in that scenario, a debtor must contribute all projected disposable income to be received during the applicable commitment period of the plan. *See* 11 U.S.C. § 1325(b)(1).

Judge Davis noted:

> A debtor's projected disposable income to be paid in during the applicable commitment period is known as the 'best efforts' test, and in contrast to the 'best interest of creditors' test under § 1325(a)(4), functions as a ceiling on payments. The 'best efforts' test ensures that a plan is feasible, and that a debtor will pay unsecured creditors more than the 'best interests of creditor's test' requires if the debtor is able to do so. The two tests are not cumulative; rather, each test must be satisfied to achieve confirmation. If a debtor can pay more than the 'best interest of creditor's test' requires, then § 1325(b) makes certain that the debtor will pay what he is able to.

*McGuire*, 2022 Bankr. LEXIS 1778, at *15 (citing *Ransom v. Fia Card Servs., N.A.*, 562 U.S. 61, 71, 131 S. Ct. 716, 178 L. Ed.2d 603 (2011)).

Given that ***projected*** disposable income is not specifically defined in the Code, the Court must look to other relevant statutory definitions for guidance. The Code defines "disposable income" for a below-median debtor such as this one, as "current monthly income received by the Debtor, less amounts reasonably necessary to be expended for …maintenance or support of the debtor or a dependent of the debtor…." 11 U.S.C. § 1325(b)(2). In turn, "current monthly income" is based on the 6-month lookback period before bankruptcy and is defined as

> (A) the average monthly income from all sources that the debtor receives… without regard to whether such income is taxable income, derived during the 6-month period ending on (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); . . . and (B)(i) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents; . . . and (ii) excludes [certain benefits and payments received by the Debtor under identified federal programs not relevant to this analysis].

11 U.S.C. § 101(10A). Applying this definition, the weekly worker's compensation payments received by Debtor pre-petition are included in the calculation of "current monthly income."

Using this statutory framework, the Supreme Court addressed "how a bankruptcy court should calculate a debtor's projected disposable income." *Hamilton v. Lanning*, 560 U.S. 505, 509, 130 S. Ct. 2464, 2469, 177 L. Ed.2d 23, 40 (2010). While recognizing the debtor's average monthly disposable income during the six full months prior to the petition date was all that was required in most cases, the *Lanning* Court found a mechanical application for determining projected disposable income was not appropriate. Instead, the Court used a "forward looking approach" where adjustments may be made for "changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 524. The decision was generally consistent with this Court's prior reasoning that "'projected disposable income' should be measured by a debtor's financial condition during the 'applicable commitment period' with references to Schedules I and J." *In re Lisenko*, Case No. 07-32774, 2008 Bankr. LEXIS 937, at *8 (Bankr. N.D.N.Y. Mar. 24, 2008) (Cangilos-Ruiz, J).

Applying the forward-looking approach set out by *Lanning*, given that part of the Indemnity Allocation of the Workers' Compensation Settlement is payment for future lost or reduced wages, the proportionate share attributable to the applicable commitment period of the Plan must be considered "projected disposable income" within the meaning of section 1325(b)(1)(B).

In reaching this conclusion, the Court found two sections of the Code significant. First, the disposable income definition in section 1325(b)(2), which is the starting point for determining projected disposable income, specifically excludes certain type of federal benefits, child support and foster care payments, and "**disability payments for a dependent child made in accordance with applicable nonbankruptcy law**. . . ." 11 U.S.C. § 1325(b)(2) (emphasis added). There is no exclusion for other benefits received by a debtor such as disability or workers' compensation

12

payments under non-bankruptcy law. 11 U.S.C. § 1325(b)(2). Congress easily could have added those benefits to the list of exclusions and removed them from the disposable income equation, but did not. Congress likewise could have removed assets claimed as exempt under section 522(c) from the calculation, to read that section 1325(b)(1)(B) includes "all income, except property enumerated under section 522." However, this section makes no distinction between exempt and non-exempt assets for disposable income. *Ortiz-Peredo v. Viegelahn*, 587 B.R. 321, 326 (W.D. Tex. 2018) (citing *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997)).

Second, Congress could have excluded property exempt under section 522(c) or workers' compensation or other disability benefits under non-bankruptcy law from the definition of currently monthly income in section 101(10A) as it did for certain federal program benefits. 11 U.S.C. §101(10A)(B)(ii). Those federal exclusions include, *inter alia*, social security and monthly compensation in connection with a disability or combat-related injury or disability for members of the uniformed services. *Id*. Although the nature and public policies underlying those types of federal benefits are similar to the state workers' compensation benefits at hand, Congress did not omit them from the currently monthly income definition.

It is well-established that where the statute is clear and unambiguous on its face, the plain meaning must be applied. *United States v. Ron Pair Enters, Inc.* 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed.2d 290 (1989) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S. Ct. 2297, 85 L. Ed. 2d 629 (1985)). Here, in the absence of a statutory exclusion, the definition of currently monthly income includes the average monthly income from "**all** sources that the debtor receives … without regard to whether such income is taxable income." 11 U.S.C. §101(10A) (emphasis added). "Quite simply, the term 'all' means 'all.'" *Ortiz-Peredo v.*

13

*Viegelahn*, 587 B.R. 321, 327 (W.D. Tex. 2018) (quoting *In re Sjogren*, 570 B.R. 1, 3 (Bankr. D. Mass. 2017)).

This conclusion aligns with the majority of cases finding that the exempt nature of property is not a factor when calculating disposable income to the extent it is not necessary for the maintenance and support of a debtor or debtor's dependents. Indeed, most post-BAPCPA cases hold that exempt assets should be included in the calculation of disposable income after determining the debtor's current monthly income. *See McGuire,* 2002 Bankr. LEXIS 1778, at *21-22 (citing *In re Adamson,* 615 B.R. 303, 311 (Bankr. D. Colo. 2020) (quoting *In re Water*s, 384 B.R. 432, 436 (Bankr. N.D. W. Va. 2008)); *In re Brah*, 562 B.R. 922, 924 (Bankr. E.D. Wis. 2017); *In re Andrade*, 2011 Bankr. LEXIS 1637, at *8 (Bankr. D.R.I. Mar. 16, 2011); *In re Royal*, 397 B.R. 88, 101-02 (Bankr. N.D. Ill. 2008)). This Court cautions, however, that an analysis of the nature of the underlying exempt asset is necessary to determine if it is a substitute or otherwise related to income during the plan's commitment period. As noted by Judge Manuel Barbosa, when reviewing a similar workers' compensation situation, "proper analysis under 1325 would obligate this Court to look behind the labels placed on the settlement. This analysis would not differ much from what Courts presently do under § 523(a)(5), that is, look to state law for guidance, but apply the Bankruptcy Code to determine whether a particular debt is actually in the nature of alimony or maintenance. Likewise, a Bankruptcy Court should look behind the labels of the Worker's Compensation Act to determine if the benefits are in fact a substitute for future wages." *In re Brannan*, No. 02-B-71411, 2005 Bankr. Lexis 1473, at *12-13 (Bankr. N.D. Ill. May 25, 2005) (citations omitted).

The Court believes this outcome honors the distinction between pre-bankruptcy exempt property and post-petition earnings, respects the Supreme Court's holding in *Lanning*, and strikes

a proper balance between Congress's intent to allow exempt property to remain protected, and its intent to require a debtor to include all projected disposable income to fund a plan when section 1325(b) is triggered. The limit placed on disposable income in section 1325(b) does not render exempt property under section 522(c) liable for prepetition debts, but rather "defines the terms upon which Congress made the benefits of Chapter 13 available." *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997). Thus, Debtor's fresh start is not endangered by a requirement that income received during the life of the Plan from otherwise exempt sources be included in the calculation of disposable income. *Id.* (citing *Schnabel*, 153 B.R. 809. 817 (Bankr. N.D. Ill. 1993)).

From a public policy standpoint, both the Bankruptcy Code and New York State exemption statutes are served by protecting that portion of the Workers' Compensation Settlement that is needed for Debtor's and Debtor's dependents' maintenance and support from creditor reach, consistent with 11 U.S.C. § 522(b)(3) and N.Y. Debt. & Cred. Law § 282(c), N.Y. Workers' Comp. Law §§ 33 and 218, while requiring the balance of the award representing future income during the applicable commitment period be provided for in the Plan.

The Court also finds this result is not contrary to the holding in the *McGuire Decision*. Unlike the Workers' Compensation Settlement here, *McGuire's* lump-sum inheritance did not represent a stream of future income payments that would implicate projected disposable income concerns under section 1325. Judge Davis in *McGuire* declined to "term the Inheritance 'disposable income' because it is not income or revenue that Debtor Wife will receive on a regular basis as envisioned by the 'best efforts' test." *McGuire*, 2022 Bankr. LEXIS 1788 at *27. That Court also noted it "will not alter its character as a prepetition asset properly claimed as exempt to one of 'income'" as "the Inheritance simply does not relate, conceptually or otherwise, to income, much less future income." *Id.* at *27-28.

15

The Workers' Compensation Settlement in the instant case is, by its very nature and terms, payment for "any future or additional awards of compensation" in exchange for which Debtor waived all further claims for "additional compensation … or reduced earnings arising from [his] accident." *Settlement Agreement*, at pp. 1, 2. The Court is not altering its character to one of income or future income – that is, in fact, what the award represents. As a result, the *McGuire Decision* and the outcome in this case can exist in harmony under the Code.

III.   The Timing of Receipt of the Workers' Compensation Settlement

Debtor asserts that the Workers' Compensation Settlement should not be included as projected disposable income because it was received in a "gap period" after the Petition Date but before the first payment under the Plan was due, and therefore was not within the "applicable commitment period" of section 1325(b)(1)(B). The Trustee counters that such an interpretation would lead to "absurd results." The Court agrees with the Trustee and rejects Debtor's position.

As noted above, with a pending objection, confirmation can only be achieved if "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan" is applied to "make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). The first plan payment must be made **not later than** 30 days after the date of the filing of the plan or the order for relief, whichever is earlier. 11 U.S.C. § 1326(a)(1). In this case, the Petition Date was January 14, 2022, making the initial payment due not later than February 14, 2022. Because the Worker's Compensation Settlement was received on January 15, 2022, before that first payment deadline, Debtor contends the applicable commitment period did not begin so the award is not projected disposable income that needs to be paid into the Plan.

16

This reasoning is unpersuasive and disregards the practical realities in a chapter 13 case. The time between the Petition Date and due date for the first plan payment does not create an "income safe zone" that would prevent the Court from considering compensation received during this 30-day period when analyzing projected disposable income. Here, the Workers' Compensation Settlement was an income substitute to compensate Debtor for future earnings, including compensation lost during the applicable commitment period. The prepayment of that wage replacement in a lump sum during the 30-day window does not remove it from that equation. Ignoring that award would conflict with the Supreme Court's directive in *Lanning* to use a "forward looking approach" which allows adjustments for "changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning*, 560 U.S. at 524, 130 S. Ct. at 2478. As a result, that portion of the award for lost wages pertaining to the applicable commitment period must be considered disposable income. The timing of receipt of the funds simply does not alter that analysis.

Moreover, from a practical standpoint, income received during the 30 days between the filing date and the first plan payment deadline is usually needed by debtors to make that initial payment on time. Compensation received during that timeframe is often the source of those funds. Accordingly, the Court rejects Debtor's approach that would require it to overlook the realities facing a wage-earning chapter 13 debtor in a typical chapter 13 case.

IV. <u>The Workers' Compensation Settlement May Be Necessary for the Maintenance and Support of Debtor and Debtor's Dependents</u>

The determination that the Workers' Compensation Settlement must be considered in the projected disposable income calculations under section 1325(b)(2) does not conclude the analysis. The term "disposable income" means current monthly income received by the debtor . . . "***less amounts reasonably necessary to be expended…for the maintenance or support of the debtor or***

17

*a dependent of the debtor*…." 11 U.S.C. § 1325(b)(2)(A)(i) (emphasis added). In this case, Debtor has alleged that the full award is necessary for his and his family's maintenance and support and therefore, is not disposable income. *See Debtor's Response,* at p. 4. Debtor states he attempted to return to work but was unable to perform the employment duties as a result of the worker's compensation injury. *See Debtor's Supplement* and *Debtor's Supplemental Affidavit* attached thereto as Exhibit "B" (Doc. 34-2). From June 2022 through at least January 2023, Debtor was unemployed "with no income from any source" so he and his family are "solely supported by Debtor's wife's income." *Id*.

While not addressed in the Trustee's Reply, he previously questioned Debtor's situation regarding potential disability, employment and social security resources that may impact the disposable income calculations and be available to cover living expenses. *Trustee's Response,* at p. 6; see also *Trustee's Supplement*, at p. 4. Concerns on whether future medical treatments were actually necessary and Debtor's ability to earn additional income were also raised. *Id.* With this conflicting record, the Court is unable to make a determination of how much, if any, of the Workers' Compensation Settlement is reasonably necessary to be expended for the maintenance and support of Debtor and Debtor's family. An evidentiary hearing to address those expenditures under section 1325(b)(2)(A)(i) will be scheduled, at which the Court will also hear evidence to establish the portion of the Workers' Compensation Settlement that is attributable to lost or reduced wages during the 3-year applicable commitment period of the Plan.

## Conclusion

For the reasons stated herein, the Exemption Objection is overruled. The Confirmation Objection is sustained, and that portion of the Indemnity Allocation of the Workers' Compensation Settlement attributable to lost or reduced compensation during the applicable commitment period

of the Plan, less the amounts necessary for the maintenance and support of Debtor and Debtor's dependents, is projected disposable income within the meaning of 11 U.S.C. § 1325(b).

Accordingly, it is hereby

ORDERED, that a conference is scheduled for June 29, 2023, at 10:00 a.m. to set a further hearing to determine: (a) what portion of the Indemnity Allocation is attributable to projected disposable income during the 3 years of the Plan; (b) what amount, if any, is needed for the maintenance and support of Debtor and Debtor's dependents; and (c) any outstanding objections to confirmation of the Plan.

###